CARL REELS

*v.*

STATE OF TENNESSEE.

355 S.W.2d 97.

(*Nashville,* December Term, 1961.)

Opinion filed March 7, 1962.

J. H. RENEAU, JR., J. H. RENEAU, III, Celina, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, LYLE REID, Assistant Attorney General, Nashville, for defendant in error.

Mr. Justice Dyer delivered the opinion of the Court.

Plaintiff in error, Carl Reels was convicted of transporting and possessing more than one gallon of intoxicating liquor for which he was fined $200.00, and given ninety days in the county jail.

On March 15, 1961 about 10:00 P.M. two state highway patrolmen were parked at the intersection of Walker Ridge Road and Highway No. 52 in Clay County, with their vehicle so placed where they could observe the traffic on Highway 52. Plaintiff in error passed this point driving a three-quarter ton truck with the top of the bed covered by a tarpaulin, but the sides of the bed were slatted rather than solid and it was possible to see into the bed of the truck through the sides. When the truck passed this intersection it was being driven at a moderate rate of speed and was not perceptibly being operated illegally.

The officers followed the truck for a short distance and observed no violations. They stopped the truck and asked to see plaintiff's in error drivers license, which he produced. They then asked him how much whiskey he had to which he replied none. The officers proceeded to remove the tail gate and tarpaulin finding 89½ gallons

of corn whiskey. The officers had not been advised plaintiff in error or this vehicle was transporting liquor.

The following is copied from the excellent brief of the Attorney-General.

"Defendant's assignments of error put in issue the legality of the search. The law in this regard can be stated with assurance, but the application of the law to a particular set of facts is more difficult.

"If the initial stopping of the Defendant was done in good faith for the purpose of checking Defendant's operator's license (the officers admitted there was no traffic violation), and the officers, while thus engaged, detected the presence of alcohol by seeing or smelling, or in any manner without searching the vehicle, they then would have sufficient reason to believe that a crime was being committed and they would be authorized to search the vehicle. But if the initial pursuing and stopping of the Defendant's vehicle and examination of his operator's license was actuated by a desire to determine if they could detect any evidence of intoxicating liquors being transported, any evidence found would not be admissible. *Hughes v. State,* 145 Tenn. 544, 238 S.W. 588, 20 A.L.R. 639; *Cox v. State,* 181 Tenn. 334, 181 S.W.2d 338, 154 A.L.R. 809; *Smith v. State,* 182 Tenn. 158, 184 S.W.2d 390; *Robertson v. State,* 184 Tenn. 277, 198 S.W.2d 633; *Epps v. State,* 185 Tenn. 226, 205 S.W.2d 4; *Murphy v. State,* 194 Tenn. 698, 254 S.W.2d 979; *Bumgardner v. State,* Tenn. 1961.

"In this case the stated grounds for suspicion were that the truck was heavily loaded and that cardboard fruit jar cartons were visible. The presence of the

odor of whiskey seems to be somewhat questionable in that the testimony of the two officers is in conflict and the record shows that none of the containers were broken.

"These facts, together with statements of the officers in regard to their purpose in stopping the vehicle, seem to cast some doubt on the legality of the search. The case seems to be closer to *Robertson v. State,* supra, in which the search was held invalid than to any case we can find in which the search was sustained."

The testimony of one of the officers indictes the purpose in following and stopping plaintiff in error.

"Q. All right, and you got suspicious and you decided to chase it down and stop it and see what was on it?

"A. Yes, sir.

"Q. And that's the reason you did stop it because you suspicioned that it had liquor on it, didn't you?

"A. Well, I don't know, we stopped it to give a general check just to see what was on it and who was driving it, driver's license, etc.

"Q. That's right, you stopped it to see what was on it and you got suspicious when you saw it was boxes on it?

"A. Yes, I guess so."

From a full examination of the record we are of the opinion, under our previous holding this search was illegal.

Reversed and dismissed.