E. Dittberner *et al. v.* The State.*

(*Nashville.*  December Term, 1926.)

Opinion filed February 26, 1927.

1. **CRIMINAL LAW. Unlawful transportation of an intoxicant. Arrest. Search.**

Cases of this class, turn largely upon the peculiar facts of each case, and where reasonable grounds exist for an arrest, a search is warranted, even though the accused had made no admission; as where the unusual and peculiar maneuvering and manipulation of an automobile, through the streets of a city, with incidental violation of traffic regulations, accompanied by an unusual appearance of the car itself.  (Post, p. 104.)

Petition to rehear, dismissed.  (Post, p. 109.)

Opinion on petition to rehear denied.  (Post, p. 105-109.)

2. **CRIMINAL LAW. Arrest. Felony.**

The power of an officer to arrest for a felony, without warrant, under the provisions of code, Shannon, sec. 6997, s. s. 2-3, is warranted when the circumstances fairly point to a felony committed, or about to be committed.  (Post, p. 105.)

**Citing:** Martin v. State (Shelby Cr., Dec. 11, 1926.)

3. **SAME. Same. Reasonable cause.**

If the officer acts upon grounds which would support a conviction in a reasonable mind, that a crime was being or about to be committed, then he acts within the authority of law, whatever the actual fact may prove to be.  (Post, p. 107.)

**Citing:** Goodwin v. State, 143 Tenn., 682.

4. **SAME. Transporting intoxicating liquor. Act 1917, ch. 12.**

The Act 1917, ch. 12, prohibits the transportation of intoxicating liquor within the State without regard to where it came from or whether it may be bound.  (Post, p. 107.)

5. **SAME. Same. Federal constitutional provisions.**

By the Federal constitutional interstate commerce provisions the transportation of liquor is unlawful.  And the right of the State to enforce the Eighteenth Amendment has been in terms declared.  (Post, p. 108.)

Citing: 7th conclusion, R. I. v. Palmer, 253 U. S., 350, 64 L. Ed., 946.
Distinguishing: Haumschilt v. State, 142 Tenn., 520.

---

*Headnotes 1. Criminal Law, 16 C. J., section 1110; 2. Criminal Law, 16 C. J., section 1110; 3. Arrest, 5 C. J., section 30; 4. Arrest, 5 C. J., sections 30, 74; 5. Intoxicating Liquors, 33 C. J., section 197; 6. Intoxicating Liquors, 33 C. J., sections 30, 34.

## FROM SHELBY.

Appeal from the Criminal Court of Shelby County.— Hon. J. ED RICHARDS, Judge.

CLARENCE FRIEDMAN, BRYAN & BRODE and GALLOWAY & WEINSTEIN, for plaintiff in error.

The Attorney-General for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an appeal from a conviction for transporting more than a gallon of intoxicating liquor. It is not denied that when arrested plaintiff in error was in charge of an automobile in which was being transported along the streets of Memphis a large quantity of liquor. The insistence is that the evidence of the officer who made the arrest was obtained through an illegal seizure and search. The question turns upon the reasonableness of the grounds which the arresting officer had. It appears that while driving along the speedway in Memphis at night, while not on active duty, the attention of the officer was attracted to a car which passed him bearing a foreign State license plate, very dusty, the springs of which had

been reenforced in a manner which he had formerly observed used on cars employed in the transportation of liquor. He also observed that despite this reenforcement of the springs, the car, as he followed it along the speedway, gave indications of being heavily loaded in the rear. It may be conceded that, while this clue was insufficient to warrant the arrest, it justified this officer in giving some attention to the car and its occupants, which he proceeded to do, following slowly. Under these circumstances, the driver of the car took the south fork of the speedway at the point where the ordinance requires cars going north and south to take the respective sides of the driveway. After driving a short distance on the wrong side of the speedway, the suspected car was stopped and its lights put out. This circumstance confirmed, as it well might have done, the suspicions of the officer, it becoming quite apparent that these parties desired to escape his observation. Furthermore, the testimony shows that the suspected car when followed by the officer's car was driven at different speeds,—slowing down and then quickening up; also was circled about on unpaved streets—all suggestive of a purpose to elude a possible pursuit and indicating guilt. A little later, when the car driven by the plaintiff in error and conveying two companions was brought to a stop at a drug store, the officer arrested the plaintiff in error and he soon thereafter admitted his guilt, and, thereafter, upon a search of the car, some fifteen cases of whiskey were found therein, each case containing twelve quarts.

As heretofore held by this court, cases of this class turn largely upon the peculiar facts of each case. Of course, officers are not justified in holding up automobiles upon mere suspicion unsupported by plausible grounds, but the facts of this case tend very strongly to support the

insistence of the State and the finding of the trial judge that reasonable grounds existed for the action taken by the arresting officer. The facts are much stronger than those recited in the recently decided case from the Fifth U. S. Circuit, relied on by counsel. Having been justifiably arrested, the search was warranted, even though the plaintiff in error had made no admissions.

The assignments are overruled and the judgment affirmed.

### ON PETITION TO REHEAR.

The points we conceive to be mainly relied on in this petition will be dealt with briefly.

In deciding at the present term the case of *Howard Martin* v. *The State* (Shelby Criminal, December 11, 1926), it was said:

"The distinction must not be overlooked between the statutory provisions applicable to arrests by an officer in felonies and in misdemeanors. The subsections of Shannon's Code, 6997, particularly in point, are as follows: An officer may arrest without a warrant:

" ' (2) When the person has committed a felony, though not in his presence.

" ' (3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

" ' (4) On a charge made, upon a reasonable cause, of the commission of a felony by the person arrested.'

"The substance of these provisions is that an officer may lawfully proceed to arrest without a warrant any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit a felony. It is essential to

the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies. It is impossible to define 'reasonable cause' in terms to fit all cases arising. Each case must stand on its own facts. A narrow construction would open the way for the escape of desperate criminals and the defeat of justice. One too liberal would lead to the harrassment of the innocent. But the officer may not be required to wait for assurance, for evidence which would convict; when circumstances fairly point to a felony it is his duty to act, and act promptly."

In that case, as in this, the arrest was for transportation in a car of more than a gallon of whiskey—a felony. We found in that case, as in this, that the circumstances were so suspicious as to afford reasonable cause, or grounds, for the arrest by the officer. Nothing in our opinion justifies the statement under assignment V of this petition that, "the court erred in holding that any suspicious circumstances would justify an officer," etc. On the contrary, in the course of that opinion it was said that, "officers are not justified in holding up automobiles upon mere suspicion unsupported by plausible grounds, but the facts of this case tend very strongly to support the insistence of the State and the finding of the trial judge that reasonable grounds existed for the action taken by the arresting officer."

As properly quoted under Assignment I, we did hold, and now reaffirm, that "the question turns upon the reasonableness of the grounds which the arresting officer had," that is, whether the arrest was lawful depends upon what the conditions and circumstances and conduct of the parties were, as presented to the arresting officer —how suspicious they were. If he acts upon grounds which would support a conviction in a reasonable mind

that a crime was being, or about to be, committed, then he acts within the authority of the law. This we have found to be true in the instant case, and a review of the record confirms our conclusion, which affirms that of the trial judge. It is unnecessary to review the facts. The circumstances taken together, giving to them their natural cumulative force, were clearly sufficient to afford reasonable grounds in the minds of this experienced officer that a large quantity of liquor was being transported in the car—as the results confirmed.

An apt illustration of suspicious circumstances justifying an arrest, whatever the actual fact may prove to be, is that of one staggering from side to side along the street having whiskey on his breath. He may prove to be perfectly sober, but these circumstances certainly justify his arrest by an officer. *Goodwin* v. *The State,* 143 Tenn., 682. So, unusual and peculiar maneuverings and manipulations of an automobile through the streets of a city, with incidental violations of traffic regulations, accompanied by unusual appearances of the car itself, may be carried to such an extent as to justify detention and investigation by an officer. We have so held.

The *search* in this case was legal, both because it followed a legal arrest, and because it followed a voluntary disclosure by the accused.

It is true that no reference was made in our original opinion to the point that the transportation was in interstate commerce. In the first place, the plaintiff in error, who only of the three occupants of the car, was convicted, did not take the stand, and there is no satisfactory evidence of the destination of the liquor, of which he appears to have been exclusively in control. Of the three occupants, but one testifies and while he states his intended destination and his information as to Dittberner

and Bohn's proposed destination, he denies all knowledge of the liquor being conveyed and therefore, of course, all knowledge of the purpose of plaintiff in error with respect to it. The facts show a transportation within this State from point to point, from one place to another—from out on the speedway to the corner drug store. This is sufficient under our statute and the indictment—regardless of whether or not the liquor had been previously brought in over the State line, and was intended to be conveyed out of the State. The Act of 1917, chapter 12, is abundantly broad in its terms to meet a case of liquor transportation within this State, without regard to where it came from, or whither it may be bound.

However, the Federal Constitutional Interstate Commerce provisions can have no application in any event. By both the express terms of the Eighteenth Amendment, and the Volstead Act of Congress, transportation of liquor is unlawful. Far from falling within the protection of the Federal Constitution, the transportation of liquor is within its express prohibition. And the right of the states to enforce the Eighteenth Amendment has been in terms declared by the United States Supreme Court. See seventh conclusion of that court in *Rhode Island* v. *Palmer,* 253 U. S., 350, 64 L. Ed., 946.

In *Haumschilt* v. *The State,* 142 Tenn., 520, this court held that a conviction under chapter 12 of our Act of 1917, could not be sustained when the proof showed the transportation to be from Missouri to Mississippi across this State, because protected by the Interstate Commerce clause, but Mr. Justice GREEN in that case said: "That transportation occurred prior to the Federal war time Prohibition Act (40 State., 1045), the Eighteenth Amendment, and the Volstead Act (11 State., 305). At that time

such transportation of liquor from one State to another State in which it could lawfully be sold was legitimate Interstate Commerce.'' The petition must be dismissed.