**Bobby Len JONES, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

July 28, 1976.

Certiorari Denied by Supreme Court Oct. 12, 1976.

Monte D. Curry, Asst. Public Defender, Nashville, for appellant.

R. A. Ashley, Jr., Atty. Gen., Alex B. Shipley, Jr., Asst. Atty. Gen., Harold B.

McDonough, Jr., Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

RUSSELL, Judge.

This is an appeal by Bobby Len Jones from his conviction of armed robbery and resultant penitentiary sentence of fifteen years. The legal sufficiency of the convicting evidence is not questioned, but two alleged errors are assigned.

The first questions the legality of the arrest and search of Jones. The main basis for this contention assumes a fact which is contrary to the actual testimony. It is argued that Jones' car was stopped after a police broadcast announced the armed robbery of a certain motel and described the get-away car as a white and red 1968 to 1970 Buick or Pontiac. The arresting officer attempted to stop Jones, who was driving a white and red 1974 Ford. The robbery victim testified that he gave the police no auto description, other than the color of a late model car. All of the officers involved denied that the broadcast described the car specifically as a Buick or Pontiac. The basis for this argument on behalf of Jones is that the police report apparently reflected such a precise (and erroneous) description.

Based upon the testimony, an officer cruising about five miles from the robbery scene spotted Jones' car about ten minutes after the robbery. It was traveling away from the direction of the crime, and was white over red. It was occupied by four people, while the broadcast described two robbers. Shortly after being spotted, the car was turned off the main highway. The officer pursued it, and attempted to stop it by use of blue authority lights and a spotlight. This was unsuccessful. The officer added his siren, but still the car was not stopped. Shortly the vehicle entered an apartment complex. The officer followed, but apparently made no further attempt to force it to stop. When it was parked at an apartment building the officer required the four occupants to get out of the car. Back-up officers had been summoned and arrived very quickly. A television set taken in the robbery was in plain view upon the car seat. Jones' female accomplice ran from the scene, carrying her purse; but was caught after entering an apartment bathroom, and the two pistols used by Jones in the robbery were found in her purse. Money and a watch taken in the robbery were found on Jones' person. All this is the evidence complained of.

Jones was identified as the robber by the victim. No evidence was presented by the defense.

■ We hold that the first officer acted legally in following Jones' car, and in attempting to stop it; and, after the occupants refused to comply with the officer's mandate to stop he was justified in following and arresting them when the opportunity presented itself. While it is well established that the legality of a search does not depend upon its fruitfulness, surely the reasonableness of this officer's actions at this time and place and under these circumstances is fortified by the fact that he certainly caught the robbers. Our Supreme Court said, in *Jones v. State*, 161 Tenn. 370, 33 S.W.2d 59 (1930):

"The substance of these provisions is that an officer may lawfully proceed to arrest without a warrant any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit a felony. It is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies. It is impossible to define 'reasonable cause' in terms to fit all cases arising. Each case must stand on its own facts. A narrow construction would open the way for the escape of desperate criminals and the defeat of justice. One too liberal would lead to the harassment of the innocent. But the officer may not be required to wait for assurance, for evidence which would convict; when circumstances fairly point to a felony it is his duty to act, and act promptly."

The other assignment of error complains that an "Allen" or "dynamite" charge was given by the trial judge with his general charge. The charge, in pertinent part, was:

"You will arrive at your verdict by agreement of all the members of the jury. The verdict should be that of each member of the jury and must not be arrived at by casting lots or by mere agreement among yourselves to accept the majority view. On the other hand, the Court would counsel each of you not to be stubborn or unbending in your attitude toward the case or any aspect thereof. While there is a difference of opinion in regard to any material matter, each of you should conscientiously and earnestly listen to the views and arguments of your fellow members with a disposition to be persuaded by them. Remember finally, however, the verdict must represent the belief and conviction of each individual juror."

The leading case on this point is *Kersey v. State*, Tenn., 525 S.W.2d 139 (1975). While it outlawed the *Allen* charge, *Kersey* adopted the A.B.A. Standards Relating to Trial by Jury, Sec. 5.4, which includes:

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict."

Our Supreme Court then proceeded to give the exact wording to be used in giving this charge, and added: "Strict adherence is expected and variations will not be permissible".

█ *Kersey* was filed June 16, 1975. This trial commenced September 10, 1975. The trial judge should have used the exact wording promulgated by our Supreme Court, and the failure to do so was error.

We overrule the assignment, as it complains of an *Allen* charge. This was not such a charge. It was a pre-deliberation charge that conformed substantially with that approved and promulgated in *Kersey*, and the error in not exactly following the mandate of *Kersey* is here held to be harmless. We call attention, however, to the Supreme Court's language that "variations will not be permissible"; and instruct the trial judge to use the language promulgated by the Supreme Court.

Affirmed.

GALBREATH, J., and TILLMAN GRANT, Special Judge, concur.